HENRY CHOUTEAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23792.   Promulgated January 14, 1929.

*T. J. Leahy, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

OPINION.

STERNHAGEN: This proceeding was submitted with that of *Mary Blackbird*, Docket No. 23272, 14 B. T. A. 1247. The Commissioner determined deficiencies of individual income tax of $40.64 for 1918, $68.98 for 1919, and $248.39 for 1920. Petitioner seeks to set aside these deficiencies and also claims overpayment of amounts already paid for such years.

The case is submitted on a stipulation of facts which is as follows:

It is hereby stipulated and agreed by and between the above-named petitioner and the above-named respondent, through their respective attorneys, that the following is a true and correct statement of the facts involved in this controversy, and that the Board of Tax Appeals may accept the same as a true, correct, and complete statement of the facts involved, in conjunction with the petition and answer filed in this case, and render judgment thereon.

(1) The petitioner, Henry Chouteau, is a member of the Osage Tribe of Indians, duly enrolled and allotted as such under the Act of Congress of June 28, 1906 (34 Stat. at L., 539) and has a certificate of competency as provided for in said Act of Congress, said certificate of competency having been issued on March 5, 1910, a copy of said certificate being attached hereto and made a part hereof, marked as Exhibit A.

(2) Henry Chouteau, the petitioner, was also during the years 1918, 1919, 1920 the owner of one-half share or allotment which he had received by inheritance from another member of the Osage Tribe of Indians, who was duly enrolled and allotted as such. The petitioner, during the years 1918, 1919 and 1920 was therefore the owner of one and one-half shares or allotments, representing his own share or allotment which he had received by way of inheritance.

(3) During the year 1918 petitioner received as income from his own share or allotment as a member of the Osage Tribe of Indians, the sum of $3,940.00 and from the inherited one-half share or allotment that was owned by him, the sum of $1,970.00. Upon the total income so received petitioner paid, as income tax, the sum of $122.40.

(4) During the year 1919 petitioner received as income from his own share or allotment as a member of the Osage Tribe of Indians, the sum of $4,980.00 and from the inherited one-half share or allotment that was owned by him, the sum of $2,490.00. Upon the total income so received petitioner paid, as income tax, the sum of $57.55.

(5) During the year 1920 petitioner received as income from his own share or allotment as a member of the Osage Tribe of Indians, the sum of $9,900.00 and from the inherited one-half share or allotment that was owned by him, the sum of $4,950.00. Upon the total income so received petitioner paid, as income tax, the sum of $551.21.

(6) The amounts received by the petitioner were paid to him through the Osage Indian Agency at Pawhuska, Oklahoma.

(7) All of the said income received by the petitioner during the years 1918, 1919 and 1920 was his pro rata part of the income of the Osage Tribe of Indians which was received during the said years from oil and gas mineral leases made by said tribe with the approval of the Secretary of the Interior under said Act of Congress of June 28, 1906. The oil and gas mineral leases were upon a part of the lands originally bought for the Osage Tribe of Indians by the United States with money belonging to said tribe and held in trust for said tribe by the United States, said lands having been purchased from the Cherokee Tribe of Indians, and deeded to the United States to be held in trust by it for the said Osage Tribe of Indians. A true copy of the aforementioned deed, marked Exhibit "B", is attached hereto and made a part hereof.

(8) The lands aforesaid were purchased from the Cherokee Tribe of Indians with funds theretofore realized from the sale of lands of the Osage Indians located in the State of Kansas.

(9) The parties agree that the Board may take judicial notice of all pertinent statutes and treaties.

(10) The computations as to amounts, and the depletion allowed as shown by the deficiency letter are correct.

Following *Mary Blackbird*, 14 B. T. A. 1247, and *Leah Brunt, etc.*, 5 B. T. A. 134,

*Judgment will be entered for the respondent.*